ARTHUR P. JACKSON, Respondent, v. THE STATE OF NEW YORK, Appellant.

Fourth Department, May 4, 1932.

*John J. Bennett, Jr., Attorney-General* [*Harold P. Burke, Assistant Attorney-General,* of counsel], for the appellant.

*Charles L. Earl,* for the respondent.

CROSBY, J. Claimant, respondent, was injured, on July 7, 1928, when a bridge, over which he was driving his automobile, collapsed and caused him to fall into the bed of West Canada creek. The creek in question is the boundary between the counties of Herkimer and Oneida. A State highway, known as the Poland-Trenton highway, passed over this bridge. With the claimant were riding two passengers who also received injuries, and who sued the counties of Herkimer and Oneida, and the towns of Trenton and Russia for the damages arising from their injuries. Judgments against those plaintiffs, entered on nonsuits, were affirmed by this court. (*Burrill v. Town of Russia,* 230 App. Div. 774.)

For years this bridge had been maintained at the joint expense of the two towns, Russia (of Herkimer county) and Trenton (of Oneida county). But on June 15, 1928, the county superintendent of highways of Oneida county, pursuant to section 19-a of the Highway Law, notified the district engineer of the State Highway Department that the bridge was unsafe for public travel. Steps were taken, pursuant to said section, which resulted in a condemnation of the bridge by the State Commissioner of Highways on June 25, 1928, and the bridge was posted against loads of more than

four and one-half tons and travel faster than ten miles an hour. On July 7, 1928, plaintiff went through the bridge while driving an auto which, with its load, weighed less than four and one-half tons, and was driven at a speed not over ten miles an hour.

The fact that the towns and counties have been held not to be liable for the injury caused in nowise points to a liability on the part of the State. Due to its sovereign character the State is immune from liability unless it has waived its immunity by statute. It was not until September 1, 1929, that the State gave a broad and general waiver of immunity from liability for the torts of its officers and employees. (Court of Claims Act, § 12-a, added by Laws of 1929, chap. 467.) So, if the judgment in this case is to be sustained, a statute must be pointed out by which the State consents to be liable for damages for injury caused in the manner disclosed by the record in this case.

Section 19-a of the Highway Law, as it stood at the time of the accident, contained this language: " Any bridge either condemned or taken over by official order as above authorized shall be maintained at the joint expense of the State and county *prior to the repair*, alteration or reconstruction of the same as provided for in this section." The next sentence provides for a division of the cost of maintenance between the State and the county, and further charges the State with the duty of supervising the maintenance and of advancing the cost in the first instance. (Laws of 1928, chap. 598, in effect March 26, 1928.) Section 19-a, subdivision 6, then provided further that: "*After the completion of the repair*, alteration, reconstruction," etc., " the same shall be maintained by the Superintendent of Public Works as part of the highway on which it is located."

Our case is governed by that section, in so far as procedure for condemnation by the State of a town bridge located on a State highway is concerned. The section goes further and casts upon the State the duty, in the first instance, of maintaining the bridge from the time of condemning it. But section 19-a contains no mention of waiver of immunity by the State, and resort must be had to section 176 to learn the extent of the State's waiver of immunity. We there learn that the State's waiver of immunity relates to damages arising from defects, not in bridges, but in such State highways as are maintained in accordance with section 170. The last section states that bridges of over five feet in span are excepted from the field covered by the term " highway." (See, also, Highway Law, § 2.) So, even though section 19-a casts upon the State the duty to maintain the bridge from the time of condemning it, the State's waiver of immunity (§ 176) relates only to breach of duty

in reference to highways, not bridges. The matter becomes clearer when subdivision 6 of section 19-a is read. That subdivision, in 1928, provided that it was only after the State had completed its work of repairing or reconstructing the bridge that the State undertook to maintain it " as part of the highway on which it is located." In other words, though the State maintained a bridge from the moment it was condemned, it maintained it " as part of the highway " only from and after the completion of repairs or reconstruction by the State. And it is only when the bridge becomes a part of the highway that it comes within the field of operation of the State's waiver of immunity (§ 176). Therefore, without reference to the State's negligence, its mantle of sovereignty protects it from plaintiff's attack.

The judgment should be reversed on the law and the claim dismissed, with costs.

All concur; EDGCOMB, J., not sitting.

Judgment reversed on the law and claim dismissed, with costs.